# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDDIE RAY GRAY,     )
    Plaintiff,    )   **Civil Action No. 14-203Erie**
          )
v.         )
          )
AUDREY CLINE, et al,    )   **Magistrate Judge Baxter**
    Defendants.   )

## MEMORANDUM OPINION
## AND ORDER

**M.J. Susan Paradise Baxter**[1]


### Relevant Procedural History

   This civil action was filed by Plaintiff, a prisoner acting *pro se*, on July 31, 2014. Plaintiff alleges that Defendants violated his constitutional and statutory rights while he was held in the custody of the Warren County Prison as a pre-trial detainee. Plaintiff brings this action pursuant to § 1983, § 1985, and § 1986 arising under the Fourth, Eighth[2], and Fourteenth Amendments. As Defendants to the original complaint, Plaintiff named the following: Audrey Cline, Rebecca Hanlin, Steven Belcher, Matthew Wallin, and Amanda Kosterman.

   In response to the original complaint, Defendants filed motions to dismiss. ECF No. 11; ECF No. 13. In opposition to the motions, Plaintiff filed an amended complaint, which is the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

[2] As a pretrial detainee, Plaintiff was subject to the protections of the Fourteenth Amendment, not the Eighth Amendment. The Third Circuit has made clear that "the Due Process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner." <u>Boring v. Kozakiewicz</u>, 833 F.2d 468, 471 (3d Cir. 1987).

operative pleading in this case. ECF No. 19. In light of the filing of the amended complaint, Defendants' initial motions to dismiss will be dismissed as moot.

Defendants have filed motions to dismiss the amended complaint. ECF No. 20; ECF No. 22. In opposition to the motions to dismiss the amended complaint, Plaintiff has filed an opposition brief[3]. ECF No. 32. Plaintiff has voluntarily withdrawn his claims against Defendant Cline. See ECF No. 31. It appears from the parties' filings that limited discovery has taken place.

The pending motions are fully briefed and are ripe for disposition by this Court.

**Standards of Review**

    1) *Pro se* litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ("[W]e should recognize that a habeas corpus petition prepared by a prisoner without the aid of counsel may be inartfully drawn and should therefore be read 'with a measure of tolerance.'"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint

---

[3] In his opposition brief, Plaintiff concedes several arguments made by Defendant Kosterman in her motion to dismiss. Specifically, Plaintiff concedes that: 1) his Eighth Amendment claims involving transportation are factually insufficient against Kosterman; 2) his § 1985 claims against Kosterman are insufficiently pled; and 3) his Fourteenth Amendment claims against Kosterman are without merit. ECF No. 32, page 22.

in favor of the complainant. <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir. 1997), <u>overruled</u> <u>on</u> <u>other</u>

<u>grounds</u> <u>by</u> <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307 (3d Cir. 2001). <u>See, e.g.</u>, <u>Nami v. Fauver</u>,

82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v.</u>

<u>Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se*

litigant, this Court will consider facts and make inferences where it is appropriate.


### 2) Motion to dismiss pursuant to Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be

viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the

complaint must be accepted as true. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007). A complaint

must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim

to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570 (rejecting the traditional 12

(b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). <u>See</u> <u>also</u> <u>Ashcroft v. Iqbal</u>,

556 U.S. 662 (2009) (specifically applying <u>Twombly</u> analysis beyond the context of the Sherman

Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the

facts as set forth in the complaint. <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>,

394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906

(3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations.

<u>Twombly</u>, 550 U.S. at 555, <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). <u>See</u> <u>also</u>

<u>McTernan v. City of York, Pennsylvania</u>, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above

the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).


**The Factual Allegations of Plaintiff's Amended Complaint**

Plaintiff is a *pro se* litigant and accordingly, this Court must liberally construe his amended complaint. In an effort to piece together the complex fact pattern in this case, reference to the exhibits submitted by the parties, all of which are state court documents, is necessary. The use of these exhibits by this Court does not convert Defendants' motions to dismiss into motions

for summary judgment. <u>Pryor v. National Collegiate Athletic Association</u>, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an  Federal Rule of Civil Procedure 56 motion for summary judgment.").

On September 2, 2012, while Plaintiff was being held at the Warren County Jail as a pretrial detainee, "an altercation occurred" between him and Defendant Correctional Officer Cline. ECF No. 19, Amended Complaint, page 1. Following the altercation, Plaintiff alleges that four Correctional Officers conspired in varying ways to fabricate a story that in addition to the initial incident with Cline, but before Plaintiff was subdued and restrained, they witnessed Plaintiff take another officer, Correctional Officer Hanlin, hostage.  Plaintiff alleges that there was no "hostage taking" and the investigation of the incident should have revealed this. Instead, he alleges that Police Officer Kosterman, who was dispatched to the scene, failed to properly investigate before bringing criminal charges against him. Kosterman conducted only a short interview with some of the witnesses/participants and allowed all four correctional officers involved to make written statements, which gave Defendants Belcher and Wallin "the opportunity to choreograph their story about Hanlin being taken as a hostage." <u>Id</u>. at page 1.

Plaintiff makes clear that his legal claims do not arise out of the initial altercation with Cline – Plaintiff provides the complete background of the events only to paint a clearer picture. Since the filing of the Amended Complaint, Plaintiff has voluntarily withdrawn his claims against Cline. <u>See</u> ECF No. 28; ECF No. 31.

Four correctional officers (Cline, Hanlin, Belcher and Wallin) gave written statements about the incident. The initial altercation between Plaintiff and Correctional Officer Cline began

at B Block on the second floor of the jail. In Correctional Officer Cline's written statement dated September 3, 2012, she indicates that after she was tackled by Plaintiff, he took her Taser and attempted to use it against her. Cline further explains that a few minutes after her Taser was taken, Correctional Officer Hanlin, responding to the emergency call, unlocked the stairwell door

> "at which time Inmate Gray pointed the Taser at her and she ran into the stairwell and deployed the Taser. The Taser did not hit any officers. Inmate Gray then ran after Officer Hanlin and I followed both of them down the stairs into the basement, at which point Inmate Gray turned to the right to head towards the male locker room. Officer Belcher and Sgt. Wallin came to the basement and were able to get Inmate Gray to lay on his stomach on the ground, at which point Officer Belcher deployed the Taser in his back."

Id. at 19-1, Exhibits attached to Amended Complaint, page 4. It is important to note that Cline's statement does not indicate that Plaintiff took Hanlin hostage.

In Officer Hanlin's typed and undated statement, she indicates:

> "I rushed down the stairs and when I opened the door to the second floor, Inmate Gray was standing in the hallway about ten feet away from me, pointing a Taser directly at my chest. I ducked back around the corner to avoid being shot. When I came back out, Gray had moved closer and was waiting for me. He grabbed me by the throat, pressing the Taser against my cheek. He then pushed me back inside the stairwell against the wall. He slammed me against the wall several times as I fought to break away. He tried to drag me down the stairs and I was finally able to break away, falling down about two or three steps. Gray then ran past me, down the stairs. I followed him to the basement. Officer Belcher caught up to me as we pursued Gray. In the basement we found Gray hiding behind a laundry bin. Officer Belcher tased Gray to get him under control. Officer Cline arrived and handcuffed Gray, while I held him down."

Id. at page 5. Hanlin's written statement differs slightly from the verbal statement she gave to Police Officer Kosterman shortly after the incident. Kosterman's narrative of her interview with Hanlin reveals that at that time Hanlin:

> "[…] gave a very vague description of the events that happened. She appeared to be very shaken up by the incident but did tell me that she responded to B Block and say Gray on Cline and attempting to deploy the Taser against her. Hanlin said that Gray saw her and pointed the Taser directly at her so she ran into the stairwell. She said that he ran into the stairwell and grabbed her by the throat with

his hand and then was pushing her around and pointing the Taser at her face. She then said that Gray then ran downstairs and she and the other officers pursued him until he was cornered and because he was reluctant to give up he was tased."

Id. at page 2.

In Correctional Officer Belcher's statement dated September 7, 2012, he indicates:

"When I turned the corner I saw Inmate Gray moving away from Officer Cline in the middle of the hall toward the stairwell door. Gray was pointing a Taser with the laser and flashlight on in my direction. I along with Sgt. Wallin lasered him with my Taser, but could not get a clear shot off. Gray continued into the stairwell that Officer Hanlin had responded from and we pursued him to the basement. When we crossed the laundry room area I turned to clear that room. When I turned back to continue down the hall I saw Gray with his arm around Officer Hanlin's neck in a choke hold approximately 10 to 12 feet ahead of us. Sgt. Wallin put his laser on Gray's head. Gray said something (I can't remember what he said) and then let Officer Hanlin go. As Gray was reluctantly going to the ground I deployed my Taser into his back so he would not try to run away again."

Id. at page 3.

Sgt. Wallin's written statement is very similar to Belcher's statement and reads:

"Upon arrival at second floor, I was behind Officer Belcher going into B Block side hall. When I turned the corner I saw Inmate Gray moving from Cline in the middle of the hall toward the stairwell door pointing a Taser with the laser and flashlight on at me. I along with Officer Belcher lasered him but could not get a shot off. He continued into the stairwell as we perused [sic] him to the basement. When we entered the basement hall we turned right, not knowing were [sic] he was. When we crossed the lunch room area I turned to clear that room. When I turned back to continue down the hall I saw Gray grabbing Officer Hanlin from behind with his arm around her neck approx. 10 ft ahead of us. I lasered Grays head because it was the only thing exposed as we advanced on the. Gray then said "I'll let go" (or something like that I can't remember). I then yelled for him to get down on the ground, at that point Officer Belcher deployed his Taser into Grays lower left back."

Id. at page 1.

A few days after the incident, Kosterman received and reviewed videotaped footage from the Warren County Prison. ECF No. 19, Amended Complaint, page 2. In her supplemental narrative dated September 7, 2012, Kosterman indicates:

> "I received the video of the assault that occurred in the WCJ. I observed the inmates in the general area of the room until Cline entered to disperse medication. When Cline had her back to the door at about 20:34:13 I observed Gray walk out of the B Block door leaving the block and remaining in the hall. At 20:34:34 I observed Cline step out of the B Block doorway and observed Gray standing facing her. Then at 20:34:42 both leave the view of the door away camera angle but I can observe that the inmates of the block were staring in the direction of where the camera was not facing. At 20:34:44 I observed Gray throwing Cline to the floor from the camera's angle. At 20:34:52 I observed Gray on top of Cline and another inmate, later identified as Justin Hall, approaching the doorway. At 20:34:54 the video shows Hall pushing the door shut and Gray still on top of Cline in the hallway. In the next frame the door is completely shut.
>
> The video of the basement was not as clear and I was able to observe Gray running through the basement hallway in what appeared to be an attempt to elude the correctional officers from regaining custody. I then observed that Gray was taken into custody and walked back down the hallway."

ECF No. 19-1, Exhibits attached to Amended Complaint, page 2. Plaintiff takes issue with Kosterman's characterization of the basement footage:

> "[I]t is not distorted, and it is clear enough to see that Plaintiff has no physical contact with any correctional officers until Plaintiff lies on the ground and they approach and restrain him. Further, it shows where Plaintiff comes out of the staircase and runs down the basement hall. During those seconds of footage it is clear that Plaintiff has no contact whatsoever with any officers at the entrance of the staircase especially not Hanlin. Video evidence directly contradicting the initial statements made by Defendants Hanlin, Belcher, and Wallin was more than enough for Defendant Kosterman to determine no probable cause existed to charge Plaintiff."

ECF No. 19, page 2.

Despite the inconsistencies with which she was presented, Police Officer Kosterman filed a criminal complaint against Plaintiff on September 4, 2012, charging him with:

> **Count 1** – Aggravated Assault Using Tear or Noxious Gas – based on Plaintiff shoving **Cline** to the ground, forcibly removing her Taser and deploying it at close range several times
>
> **Count 2** – Aggravated Assault Using Tear or Noxious Gas – based on Plaintiff grabbing **Hanlin** by the throat and pointing a Taser at her face before slamming her into a wall several times

> **Count 3** – Aggravated Assault – based on Plaintiff pointing an active Taser at **Belcher** which potentially could have result in serious bodily injury
>
> **Count 4** – Aggravated Assault – based on Plaintiff pointing an active Taser at **Wallin** which potentially could have resulted in serious bodily injury
>
> **Count 5** – Assault by a Prisoner – based on Plaintiff physically shoving **Cline** to the ground, forcibly removing her Taser and deploying it at close range several times
>
> **Count 6** – Assault by a Prisoner – based on Plaintiff grabbing **Hanlin** by the throat and pointing a Taser at her face before slamming her into a wall several times
>
> **Count 7** – Assault by a Prisoner – based on Plaintiff pointing an active Taser at **Belcher** which potentially could have resulted in serious bodily injury
>
> **Count 8** – Assault by a Prisoner – based on Plaintiff pointing an active Taser at **Wallin** which potentially could have result in serous bodily injury
>
> **Count 9** – Disarming a Law Enforcement Officer – based on Plaintiff physically shoving **Cline** to the ground, forcibly removing her Taser and deploying it at close range several times
>
> **Count 10** – Escape – based on Plaintiff removing himself from B Block in the Warren County Jail and travelling throughout the facility to evade custody

ECF No. 20-1, Defendant Kosterman's Motion to Dismiss Amended Complaint, pages 1-7 (emphasis added). An arrest warrant was issued. ECF No. 19, ¶ 14. Kosterman arrested Plaintiff around September 17th by serving him with the criminal complaint in the Warren County Jail.

A preliminary hearing was held before Judge Laura Bauer on February 27, 2013. Cline testified that she saw Plaintiff grab Hanlin in a chokehold. Hanlin testified that she didn't recall whether Plaintiff "grabbed [her] in any fashion." Wallin and Belcher each testified that he saw Plaintiff with his arm around Hanlin's neck in a chokehold. ECF No. 19, Amended Complaint, at pages 6-7. Officer Kosterman did not testify at the preliminary hearing. Thereafter, Plaintiff was charged with the following by Criminal Information filed March 13, 2013:

**Count 1** – Aggravated Assault of **Cline** by attempting to cause or intentionally or knowingly causing bodily injury

**Count 2** – Aggravated Assault of **Cline** by attempted by physical menace to put officer in fear of imminent serious bodily injury

**Count 3** – Aggravated Assault of **Cline** by using an incapacitation device against her

**Count 4** – Assault by prisoner of **Cline** by committing an assault with a weapon

**Count 5** – Disarming Law Enforcement Officer of **Cline** by removing the Taser from her

**Count 6** – Aggravated Assault of **Hanlin** by attempting to cause bodily injury to her

**Count 7** – Aggravated Assault of **Hanlin** by attempting by physical menace to put her in fear of imminent bodily injury

**Count 8** – Aggravate Assault of **Hanlin** by use of incapacitation device against her

**Count 9** – Assault by prisoner of **Hanlin** by committing an assault with weapon

**Count 10** – Aggravated Assault of **Belcher** by physical menace

**Count 11** – Criminal Attempt/Assault by Prisoner of **Belcher** – pointing the Taser

**Count 12** – Aggravated Assault of **Wallin** by physical menace

**Count 13** – Criminal Attempt/Assault by Prisoner of **Wallin** by pointing Taser

**Count 14** – Use or Possession of Incapacitation Device

**Count 15** – Criminal Attempt/Escape

ECF No. 32-1, Plaintiff's Opposition Brief, pages 1-4 (emphasis added).

A jury trial began on August 18, 2013, before Judge Gregory Hammond of the Warren County Court of Common Pleas. Cline testified that Plaintiff held Hanlin hostage in the basement of the Warren County Jail. ECF No. 19, Amended Complaint, at ¶ 37. On cross-examination, Cline admitted that although she did not "actually witness it with her own eyes,

10

[…] she knew for a fact that it occurred." Id. at ¶ 38. Defendant Hanlin testified that Plaintiff "never came in physical contact with her in the basement of the prison." Id. at ¶ 39. Belcher and Wallin testified as they did at the preliminary hearing that Plaintiff "placed Defendant Hanlin in a hostage situation." Id. at ¶ ¶ 40-41. The videotaped footage was played and "showed Plaintiff exit the stairwell, run down the hallway, crouch down behind a large yellow laundry car then, Plaintiff stood, laid on his stomach and did not move. Defendants Wallin, Belcher, Hanlin and Cline approached and restrained Plaintiff. Never once did the footage reveal any hostage situation occur[ed]." Id. at ¶ 43.

Plaintiff was convicted of and sentenced for Counts 1 -5 involving Correctional Officer Cline, as well as Count 14 – Use or Possession of Incapacitation Device; and Count 15 – Criminal Attempt/Escape. ECF No. 20-3, Defendant Kosterman's Motion to Dismiss, pages 1-3. The jury returned a verdict of not guilty as to all charges in connection with crimes against Hanlin, Wallin, and Belcher.

As to Defendant Kosterman, Plaintiff alleges that when she was questioned at trial about "her lack of utilizing proper police procedures," she stated that she did not view the crime scene and did not take initial statements. Instead, Kosterman told Cline, Hanlin, Wallin and Belcher to email her their written statements when they had time to do so. Kosterman stated that her reasons "for not acting with impartiality and professionalism," were "due to the fact that Plaintiff was already being held as a pre-trial detainee in the prison, Plaintiff was a criminal, and the Defendants were correctional officers." When asked if her actions "would have been different had the incident involved persons not being held as pre-detainees," Kosterman answered that "she would have acted more diligently to get all the facts, but in this instant matter, she didn't feel it was 'necessary.'" ECF No. 19, Amended Complaint, at ¶ 45.

Plaintiff alleges that at all times since September 7, 2012, when he was transported either to or from Warren County Jail, he was subjected to "added security devices" in the use of a "shock belt" placed around his stomach and a crude metal leg brace strapped on him from ankle to hip locking his leg in place. Plaintiff alleges that on one occasion he was subjected to these devices for thirteen hours and he was left with deeply punctured skin on his leg. Id. at ¶¶ 49-50. An unknown Deputy explained to Plaintiff that the added security measures were mandated because "you're charged with taking a Correctional Officer as a hostage trying to escape." Id. at ¶ 51.

In his Amended Complaint, Plaintiff clarifies:

> Plaintiff wants it to be clear that no claims raised herein are challenging the legality nor validity of any convictions stemming from the guilty convictions, nor is Plaintiff seeking review and relief for perjured testimony. The facts set forth after the criminal process began are made simply to show all the Defendants' persistent attempts to have Plaintiff punished for a crime that not only did he not commit but also never occurred. All claims raised are the result of a jury's return of NOT GUILTY verdicts in connection to Defendants Hanlin, Wallin, and Belcher. Nothing herein would infringe on the lawful adjudications relating to Defendant Cline, and any relief granted would not strain the validity of Plaintiff's convictions.

ECF No. 19, page 2-3.

In Plaintiff's opposition brief, he summarizes his claims against Defendants as: false arrest and malicious prosecution against all four Defendants; civil conspiracy under § 1985 and § 1986 against Defendants Belcher and Wallin; and civil conspiracy under § 1986 against Hanlin and Kosterman. ECF No. 32, page 7.


**Defendant Kosterman's Motion to Dismiss [ECF No. 20]**

In his Opposition Brief, Plaintiff makes clear that he is only asserting claims of false arrest, malicious prosecution, and § 1986 conspiracy against Defendant Kosterman. See ECF No. 32. See also footnote 3, supra.

**1) Qualified Immunity**

Defendant Kosterman moves for the dismissal of the false arrest and malicious prosecution claims on the basis of qualified immunity.

In suits brought under 42 U.S.C. § 1983, "public officials are immune from suit … unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" City and County of San Francisco v. Sheehan, ___ U.S. ___, 135 S.Ct. 1765 (May 18, 2015) ("Sheehan") quoting Plumhoff v. Rickard, ___ U.S. ___, 134 S.Ct. 2012, 2023 (2014). The doctrine "exists to protect officers 'from undue interference with their duties and from potentially disabling threats of liability.'" Lash v. Lemke, 786 F.3d 1, 5 (C.A. D.C. May 15, 2015) quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" Messerschmidt v. Millender, ___ U.S. ___, 132 S.Ct. 1235, 1244 (2012) quoting Ashcroft v. al-Kidd, ___ U.S. ___, 131 S.Ct. 2074, 2085 (2011).

The analytical framework that district courts have traditionally employed in determining the applicability of the qualified immunity defense was set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 201 (2001). Qualified immunity involves two inquiries: 1) do the facts

alleged show that a state actor violated a constitutional right? and 2) was that constitutional right clearly established so that a reasonable person would know that their conduct was unlawful? Id.[4] "Qualified immunity is an affirmative defense for which the government official bears the burden of proof." Harlow, 457 U.S. at 815.

The defense of qualified immunity is peculiarly well-suited for resolution at the summary judgment stage, instead of at the earlier motion to dismiss stage. See Pearson v. Callahan, 555 U.S. 223, 225 (2009) ("[W]hen qualified immunity is asserted at the pleading stage, the answer to whether there was a violation may depend on a kaleidoscope of facts not yet fully developed."). The lack of a sufficient record upon which to decide the qualified immunity issue is of particular concern in a motion to dismiss context. The standard of review for a Rule 12(b)(6) motion favors the denial of qualified immunity. See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992) ("On review of a motion to dismiss for failure to state a claim, we look only to the complaint to see whether there is any set of facts plaintiff can prove that would support denial of immunity.").

Despite moving for dismissal on the basis of qualified immunity, Defendant Kosterman has not briefed the second prong of this qualified immunity analysis. Instead, Kosterman's argument focuses solely on the first prong of the qualified immunity inquiry. It is Defendant's burden to establish that she is entitled to qualified immunity (Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004)) and because she has not fully briefed the issue, she has failed to meet her burden. Accordingly, this Court will construe the argument as a straightforward Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted.

---

[4] Courts are accorded discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S 223, 236 (2009).

In the face of a motion to dismiss, this Court must determine whether the facts alleged in the Amended Complaint show that Kosterman violated Plaintiff's Fourth Amendment rights. The false arrest and malicious prosecution claims will be examined in that order.

The False Arrest Claim

An "arrest without probable cause is a constitutional violation" under the Fourth Amendment and gives rise to a cause of action under § 1983. Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978). In other words, "a defendant officer violates an individual's Fourth Amendment right to be free from  false arrest is if it was not objectively reasonable for the officer to believe that  probable cause existed at the time of the arrest." Noble v. City of Camden, 2015 WL 3954047, at *15 (D.N.J. June 29, 2015). See also Dennis v. City of Bridgeton, 2006 WL 3359712, at *2 (D.N.J. 2006) (to state a claim for false arrest, a plaintiff must allege: "1) that there was an arrest; and 2) that the arrest was made without probable cause.").

 "The proper inquiry in a § 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." Paff v. Kaltenback, 204 F.3d 425, 436 (3d Cir. 2000).

In the situation where a § 1983 plaintiff challenges the validity of a search warrant by asserting that a law enforcement officer submitted a false affidavit, the plaintiff must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 171 (1978)

(holding that there is a presumption of validity as to the affidavit supporting an arrest warrant). Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). See also Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (in false arrest cases where an officer arrests an individual pursuant to a warrant, qualified immunity shields the officer from damages liability unless "the warrant application is so lacking in indicia of probable cause as to render the officer's belief in its existence unreasonable."). Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence,

> (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and
>
> (2) that such statements or omissions are material, or necessary, to the finding of probable cause.

Collins, 337 Fed. App'x at 192, quoting Sherwood, 113 F.3d at 399.

Here, Plaintiff alleges that Defendant Kosterman charged Plaintiff "with taking Defendant Hanlin as a hostage even though Defendant Kosterman retained evidence and personal knowledge that the criminal act and allegations were false. Therefore, Defendant Kosterman was aware that no probable cause existed for the crimes against Hanlin, but she still implemented them into the affidavit of probable cause." ECF No. 19, page 13. Furthermore, Defendant Kosterman "knowingly misled and misrepresented the facts and circumstances of the case in her affidavit of probable cause." Id. at page 14.

Defendant Kosterman argues that the four written statements of the correctional officers provide the probable cause upon which she based her affidavit and the criminal complaint. ECF No. 21, page 7. However, Defendant's argument is inapposite. Kosterman's affidavit of probable cause specifies that after Hanlin, Belcher and Wallin responded to the disturbance call, Gray "then ran into the stairwell and the basement where he grabbed Officer Hanlin by the throat and

pointed the active Taser X26 at her head, pressing it to her face." ECF No. 32-1. When

Kosterman's statement is compared to the four written statements attached to the Amended

Complaint, it demonstrates, at a minimum, Kosterman's reckless disregard for the truth. One of

the four statements indicates there was no assault against Hanlin. Two of the remaining three

statements indicate an assault happened after Plaintiff was chased to the basement, while the

other statement (from the alleged victim herself) indicates an assault occurred on the second

floor before Plaintiff was chased to the basement.[5]

Moreover, Plaintiff alleges that the video footage from the basement contradicts the four

written statements:

> It is clear enough to see that Plaintiff has no physical contact with any
> correctional officers until Plaintiff lies on the ground and they approach and
> restrain him. Further, it shows where Plaintiff comes out of the staircase and runs
> down the basement hall. During those seconds of footage it is clear that Plaintiff
> has no contact whatsoever with any officers at the entrance of the staircase
> especially not Hanlin. Video evidence directly contradicting the initial statements
> made by Defendants Hanlin, Belcher and Wallin was more than enough for
> Kosterman to determine no probable cause existed to charge Plaintiff.

ECF No. 19, page 2. Plaintiff alleges that in the basement footage "Defendant Kosterman was

fully able to see that Defendant Hanlin was not held against her will by Plaintiff. However,

---

[5] Cline does not mention any contact between Plaintiff and Hanlin (ECF No. 19-1, page 4).
Hanlin's written statement indicates that the physical contact between Plaintiff and herself
occurred before the action moved from the second floor to the basement. Id. at page 5. ("He
grabbed me by the throat, pressing the Taser against my cheek. He then pushed me back inside
the stairwell against the wall. […] he tried to drag me down the stairs and I was finally able to
break away, falling down about two to three steps. Gray then ran past me down the stairs. I
followed him to the basement."). Hanlin's written statement is consistent with the verbal
statement she gave to Kosterman on the night of the incident – indicating that the physical
contact between her and Plaintiff occurred before Plaintiff ran down into the basement. Id. at
page 2. In direct contradiction to Hanlin's version of events, Belcher and Wallin indicate that
Plaintiff's contact with Hanlin occurred in the basement. Belcher indicates that after "we pursued
him to the basement" and "cleared the laundry room," he "saw Gray with his arm around Officer
Hanlin's neck in a choke hold." Id. at page 3. Similarly, Wallin indicates that after they pursued
him to the basement, he "saw Gray grabbing Office Hanlin from behind with his arm around her
neck." Id. at page 1.

Defendant Kosterman still swore through and by the criminal complaint that the incident occurred even through there was clear and convincing evidence disputing those allegations made against Plaintiff." Id. at ¶ 16.

Plaintiff argues that Defendant Kosterman did not follow up on the inconsistencies between the four statements themselves, or the inconsistences between the video and the statements, but instead swore Plaintiff assaulted Defendant Hanlin after being chased to the basement. Kosterman's failure to further investigate in the face of the inconsistencies of the statements, further contradicted by the video footage demonstrates, at a minimum, a "reckless disregard for the truth."[6] See Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) ("An assertion is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.").

Next, under the Franks analysis, this Court must determine whether the false statement was material to the finding of probable cause.  In order to determine "the materiality of the misstatements and omissions, the court must excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." Goodwin v. New Jersey, 2015 WL 4022867, at *11 (D.N.J. June 30, 2015) quoting Wilson, 212 F.3d at 789. See also Bircher v. Pierce, 2015 WL 2193690 (3d Cir. May 12, 2015).  Under Franks, falsehoods are deemed material to the finding of probable cause

---

[6] Furthermore, Plaintiff argues that although Kosterman received video footage of the basement, she did not follow-up on the video footage of the stairwell because, according to her trial testimony, Deputy Warden Smith indicated to her that "it only showed people running through the stairwell and wasn't important." However, Warden Smith testified at trial that Kosterman never requested the video footage from the stairwell. ECF No. 32, page 13.

if the affidavit, "with the … false material set to one side … is insufficient to establish probable cause." Franks, 438 U.S. at 156.

Here, the affidavit of probable cause, in its entirety, reads:

1) On 9/2/2012 at about 2105 hrs. Correctional Officer A. Cline was conducting her duties inside of B Block in the Warren County Jail when the defendant, Eddie Ray Gray, stepped outside of the housing unit and stood beside the doorway.

2) When Officer Cline stepped outside of the door, [Gray] grabbed her, threw her to the floor and attempted to remove her Taser X26 from her holster.

3) [Gray] was successful in removing the Taser X26 from Officer Cline's holster and he attempted to drive stun her several times with the weapon active and cartridge on.

4) Correctional Officer Hanlin, Belcher and Sgt. Wallin heard the disturbance via radio and responded to the area where [Gray] then pointed the active Taser X26 directly at each officer.

5) *[Gray] then ran into the stairwell and the basement where he grabbed Officer Hanlin by the throat and pointed the active Taser X26 at her head, pressing it into her face.*

6) [Gray] then ran further into the basement of the facility, attempting to elude the correctional officers, where [Gray] was then apprehended and secured.

I, Patrolman Amanda Kosterman (516), being duly sworn according to the law, depose and say that the facts set forth in the foregoing affidavit are true and correct to the best of my knowledge, information, and belief.

ECF No. 20-1, page 7.

Excising Kosterman's false statement (in italics above) from the affidavit leaves no mention of any physical contact between Plaintiff and Officer Hanlin. Accordingly, there can be no probable cause for the charges involving Hanlin as the victim. So then, as alleged in the Amended Complaint, Plaintiff has made out a sufficient claim that his Fourth Amendment right to be free from false arrest was violated by Kosterman.

The Malicious Prosecution Claim

In order to make out a malicious prosecution claim under the Fourth Amendment, a plaintiff must show that: "1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (internal citation omitted).

In her motion to dismiss, Kosterman argues that Plaintiff's failure to establish that the criminal proceeding ended in his favor is fatal to his malicious prosecution claim. ECF No. 21, page 9 ("Despite Plaintiff's attempt to separate his acquittals from his convictions in bringing this suit, Plaintiff cannot escape the fact that he was found guilty of seven counts and sentenced to a term of 182 to 364 months of incarceration."). Defendant Kosterman misunderstands the law on this point. The fact that Plaintiff was found guilty on seven of the fifteen counts with which he was eventually charged is not an automatic failure to establish favorable termination. The Third Circuit has held that "the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole." Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009). So, of course, the converse is also true: a conviction on some of the crimes charged does not automatically mean that the proceedings have not terminated in the claimant's favor.

In a situation where a plaintiff was simultaneously acquitted of some charges and convicted of others, a court must undertake an analysis of whether "the offenses as stated in the statute and the underlying facts of the case ... indicate that the judgment as a whole" reflects the

20

Plaintiff's innocence of "the alleged *misconduct* underlying the offenses charged." Id. (emphasis added)[7] In other words, the court must undertake a two-prong analysis:

> First, the court must examine the relevant criminal statutes for the charges on their face, and second, the court must inquire into the underlying misconduct that the charges aimed to punish.

Jackson v. Nassan, 2009 WL 2707447, at *3 (W.D. Pa. Aug. 26, 2009) citing Kossler, 564 F.3d at 189. Kosterman has not undertaken this analysis and this Court will not do so on its own. See Laborers' Int'l. Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("a passing reference to an issue … will not suffice to bring that issue before this court.").

Next, as to the third element of a malicious prosecution claim, Kosterman argues that she had probable cause to initiate the proceeding against Plaintiff. As discussed thoroughly above, Plaintiff has adequately alleged a lack of probable cause existed to charge him with the crimes against Officer Hanlin and the same analysis applies as to whether Plaintiff has adequately alleged that Kosterman lacked probable cause to initiate the criminal proceedings against him.

As to the fourth element, Kosterman argues that Plaintiff has failed to adequately plead that Kosterman acted maliciously or for a purpose other than bringing Plaintiff to justice. Again, Defendant's argument is misplaced. Plaintiff alleges that Kosterman acted in the challenged way "due to the fact that Plaintiff was already being held as a pretrial detainee in the prison, Plaintiff was a criminal, and the Defendants were correctional officers." ECF No. 19, ¶ 45. Plaintiff's allegation suffices to withstand motion to dismiss scrutiny.

---

[7] Prior criminal proceedings must be terminated in a way that espouses the innocence of the accused. Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009). A plaintiff may demonstrate his innocence by showing that the prior case was terminated in any of the following ways: (a) a discharge by a magistrate judge at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (3) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court. Id.

The Court need not engage in analysis of the fifth element of the malicious prosecution claim as Defendant Kosterman has provided nothing except the bald allegation that this element was not met: "Plaintiff has failed to adequately plead, nor does the evidence support, … any deprivation of Plaintiff's liberty was supported by his convictions." ECF No. 21, page 10.

Accordingly, having survived scrutiny of each element of the claim, Plaintiff's charge of malicious prosecution against Defendant Kosterman remains in the case.

### 2) § 1986 Conspiracy

Plaintiff alleges: "Defendant, having concrete knowledge that the allegations complained of herein were false, was obligated to expose the involved statements and fabrications, but failed to do so. For reasons unknown, Defendant's actions were uniform to Defendants Belcher and Wallin's which allowed the conspiracy and false allegation to continue on. Her failure to stop the conspiracy and act with reasonable diligence resulted in a violation of 42 U.S.C. § 1986." ECF No. 19. In his opposition brief, Plaintiff characterizes this claim against Kosterman as "failing to prevent and/or stop a conspiracy." ECF No. 32, page 7.

Defendant Kosterman moves to dismiss the § 1986 conspiracy claim against her on two separate bases: first, a failure to allege the underlying § 1985 conspiracy, and second, the time bar of the statute of limitations.

### a) Failure to state a claim

Section 1986 provides a cause of action against persons who are aware of a § 1985 conspiracy, but fail to intervene. In order to state a claim under § 1986, a plaintiff must allege that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the

power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994). Plaintiff must have stated a valid claim for conspiracy under 42 U.S.C. § 1985. Id. ("transgressions of § 1986 by defendant depend on a preexisting violation of § 1985"). Kosterman argues that Plaintiff has failed to allege facts to support the underlying § 1985 conspiracy between the correctional officers in order to support the § 1986 conspiracy claim. This Court disagrees. See infra, pages 28-30.

      **b)**     **Statute of limitations[8]**

Next, Defendant Kosterman moves to dismiss the § 1986 claim against her based on the time bar of the statute of limitations.

The statute itself provides that any action must be commenced "within one year after the cause of action has accrued." 42 U.S.C. § 1986. This action was filed on July 31, 2014, more than one year after the arrest in September of 2012.

A claim accrues when the litigant knew or had reason to know of the injury. Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998). Thus, the date when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant, triggers the limitations period. See Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period).

---

[8] Generally, Rule 12(b) does not include a statute of limitations defense. However, the "Third Circuit Rule" permits a limitations defense to be raised by way of a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id.

In opposition to the motion to dismiss, Plaintiff argues that his conspiracy claim did not accrue at the time of the arrest. Plaintiff explains that, although he knew the allegations against him were false, he did not become aware of the factors that enabled the correctional officers to conspire against him. These factors include: 1) Plaintiff did not receive or view the "emailed reports" until August 16, 2013 (at the time of trial); 2) Kosterman did not testify at Plaintiff's preliminary hearing on February 27, 2013, which eliminated Plaintiff's knowledge of Kosterman's lack of probable cause; 3) Plaintiff did not view the basement footage until his trial; 4) Kosterman's testimony at Plaintiff's jury trial revealed that she did not receive immediate statements from Hanlin, Cline, Wallin, or Belcher on the evening of September 2, 2012; 5) Plaintiff was not aware until trial that Hanlin actually wrote a statement and delivered it to Kosterman personally, including the fact that Hanlin stated at trial that she had "help" writing her statements before giving it to Kosterman; and 6) Plaintiff was not informed of Kosterman's lack of investigation until Kosterman testified at Plaintiff's trial.

At this early stage of the litigation, it is plausible that the § 1986 conspiracy claim did not accrue at the time of arrest, but at some later date. Accordingly, the motion to dismiss will be denied in this regard.

**Motion to dismiss by Hanlin, Belcher and Wallin [ECF No. 22][9]**

**1)      Lack of Personal Involvement**

Defendants argue that Plaintiff has not adequately alleged the personal involvement of Defendants Hanlin, Belcher and Wallin in the false arrest, malicious prosecution, and transportation claims. This Court agrees.

_____

[9]  Because Plaintiff clarifies his claims in his Opposition Brief, several of Defendants' arguments in their motion to dismiss need not be addressed.

Liability in a civil rights action pursuant to § 1983 cannot be imposed absent personal involvement in the challenged actions. See Rizzo v. Good, 423 U.S. 362, 375-77 (1976). It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the alleged deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013) citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

As to the false arrest claim, Plaintiff does not allege that any of these three Defendants arrested him, and the evidence before this Court demonstrates that only Defendant Kosterman effectuated the arrest of Plaintiff. ECF No. 20-1. The same is true of the malicious prosecution claim: only Defendant Kosterman initiated the criminal proceedings against him. Id.

As to the transportation claim, Plaintiff alleges that at all times since September 7, 2012, when he was transported either to or from Warren County Jail, he was subjected to "added security devices" in the use of a "shock belt" placed around his stomach and a crude metal leg brace strapped on him from ankle to hip locking his leg in place. Plaintiff alleges that on one occasion he was subjected to these devices for thirteen hours and he was left with deeply punctured skin on his leg. ECF No. 19, ¶¶ 49-50. An unknown Deputy explained to Plaintiff that the added security measures were mandated because "you're charged with taking a Correctional Officer as a hostage trying to escape." Id. at ¶ 51.

Plaintiff concedes that his transportation claim is factually insufficient against Kosterman. See supra, footnote 3. However, this claim is also factually insufficient against all Defendants. Plaintiff has not made factual allegations that any of these named Defendants have been personally involved in the utilization of these additional security devices. Instead, he seeks

to have this Court impose liability upon them because their fabrication of the hostage story led to Plaintiff being charged with "baseless crimes" resulting in the use of the devices.

Plaintiff's theory of liability is flawed, both legally and factually. He has not alleged that Hanlin, Belcher, or Wallin have been personally involved in the utilization of the additional security measures. Moreover, Plaintiff's argument presupposes that the fabricated charges are the sole reason for the additional security, completely ignoring the factual events leading to Plaintiff's convictions for aggravated assault against Cline and his attempted escape, which also provide a basis for the use of additional security procedures.

The false arrest, malicious prosecution, and transportation claims will be dismissed against these three Defendants.

### 2) The Remaining Conspiracy Claims

#### a) The favorable termination requirement of <u>Heck v. Humphrey</u>

Defendants move to dismiss the conspiracy claims against them on the basis of the favorable termination requirement of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). In <u>Heck</u>, the Supreme Court held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id</u>. at 486–87.

"A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." <u>Id</u>. at 487. Thus, a court faced with a suit

for damages under § 1983 must first "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his ... sentence." Id. If so, the complaint must be dismissed "unless the plaintiff can demonstrate that the ... sentence has already been invalidated." Id. More recently in Wilkinson, the Supreme Court explained that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Defendants argue that Plaintiff's allegation that Defendants conspired to fabricate charges against him related to the alleged hostage situation:

> "… by inference and extension, call into question his conviction on other charges he faced. The conviction on these other charges has not been attacked by Gray; in fact, he has admitted his role in the commission of those charges. There may have been insufficient evidence to convict Gray at trial on Counts 6-13 of the criminal information; however, Plaintiff should not be permitted to raise conspiracy claims in this forum relative to those charges without first showing that his conviction on Counts 1-5 and 14-15 have been overturned, reversed, or expunged. To allow such an attack would be contrary to the holding of Heck."

ECF No. 23, page 13.

Defendants' reliance on Heck is misplaced. A victory for Plaintiff on his claim that Hanlin, Belcher and Wallin conspired to fabricate false charges (of assault against Hanlin) does not necessarily imply the invalidity of Plaintiff's conviction for charges stemming from the confrontation with Cline. Although all the criminal charges arose out of the same occurrence, they are based on different actions and can easily be separated for purposes of this Heck analysis. See, for example, Suarez v. City of Bayonne, 566 Fed.Appx. 181, 184-85 (3d Cir. 2014) citing Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997) ("We have recognized that Heck does not automatically bar a § 1983 claim for excessive force against an officer even though the

plaintiff was convicted of resisting arrest (or, as here, simple assault) based on the same interaction with police. This is so because law enforcement officers can effectuate a lawful arrest in an unlawful manner.").

Defendants' motion to dismiss will be denied in this regard.


### b) Failure to State a Conspiracy Claim

Plaintiff brings conspiracy claims against Belcher and Wallin under § 1985 and § 1986, and against Hanlin under § 1986. Defendants move to dismiss these claims as they are not pled with sufficient particularity.

Section 1985 allows an action to be brought by an individual harmed by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the Equal Protection of the laws, or of the equal privileges and immunities under the laws." 42 U.S.C. § 1985(3); Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006). Meanwhile, § 1986 is a corollary to § 1985 and provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; …

42 U.S.C. § 1986.

Plaintiff specifically alleges that Defendants Belcher and Wallin: maliciously fabricated false criminal charges against him "with the intent to have [him] unjustly punished"; the false allegations were the product of a conspiracy to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendments; and their actions up through his criminal trial constitute an ongoing conspiracy. ECF No. 19. As to Defendant Hanlin, Plaintiff alleges that she "had

personal knowledge that her fellow officers created false allegations against Plaintiff and at no time did Defendant Hanlin attempt to bring a stop to the conspiracy by bringing it to the attention of officials involved in the matter…" Id.

"To plead conspiracy under § 1985(3), a complaint must allege specific facts suggesting there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." Lamb Found. v. North Wales Borough, 2001 WL 1468401, at *15 (E.D.Pa. Nov. 16, 2001). The complaint must contain facts that plausibly allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons equal protection under the law or equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; and (4) injury to a plaintiff's property or his person, or deprivation of a right or privilege of a U.S. citizen. Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).

The Court concludes that Plaintiff has alleged sufficient facts to satisfy § 1985(3)'s pleading requirements. At this stage, these allegations provide enough detail to put Defendants on notice of the precise statements that form the alleged conspiracy and the actions that are alleged to further the conspiracy.

Section 1986 provides an additional cause of action for those able to state a claim under § 1985. Section 1986 provides a cause of action against persons who are aware of a § 1985 conspiracy, but fail to intervene. In order to state a claim under § 1986, a plaintiff must allege that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).

Here, Plaintiff's allegations against Hanlin track these elements closely and are sufficient to survive a motion to dismiss.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDDIE RAY GRAY,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 14-203Erie** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AUDREY CLINE, et al,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |

**O R D E R**

AND NOW, this 17th day of September, 2015;

IT IS HEREBY ORDERED that the motions to dismiss by Defendants [ECF No. 11; ECF No. 13] be dismissed as moot in light of the filing of the amended complaint.

IT IS FURTHER ORDERED that the motion to dismiss the amended complaint filed by Defendant Kosterman [ECF No. 20] is denied.

IT IS FURTHER ORDERED that the motion to dismiss the amended complaint filed by Defendants Hanlin, Belcher and Wallin [ECF No. 22] is granted in part and denied in part. The false arrest, malicious prosecution, and transportation claims are dismissed, but the conspiracy claims survive.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge